*Northern District*

No. 4819

## AARON SUCHOVOLSKY ET AL
v.
## JOHN PEARLSTEIN

March 15, 1955

*Eno, J.* By an action of contract the plaintiffs seek to recover for the care and maintenance of the defendant's father, under a written agreement under seal, dated May 23, 1951, a copy of which is attached to the report.

The purpose of the defendant in making the agreement, as stated therein, was to provide for the suitable care and maintenance of his father, during the latter's lifetime.

The plaintiffs agreed "to provide a suitable home, food and such personal attention and attendance" for said father during his lifetime "as may be required by

his advanced age". For this the defendant agreed to pay $190.00 per month on the first day of each month during the lifetime of his father, commencing from the time the plaintiffs had moved to New York and established a home and suitable quarters for him there.

*The evidence shows that* the plaintiffs established a home in New York in June, 1951 and took the defendant's father with them; that the defendant paid them $1520 in advance, as provided in the contract; that in March, 1952, the father suddenly departed to visit friends and never returned; that the defendant made unsuccessful endeavors to have his father return but he never did before his death on September 18, 1953. The defendant paid another $200.00 which paid up to the time of the father's departure. The plaintiffs testified that they had spent $15.00 per week for the foodstuffs for the father, and they held a room open with his clothing from March, 1952 till part of 1953, hoping that the father would return. It was admitted that the female plaintiff was the principal caretaker who cooked the meals for and kindly took care of the father.

The trial judge (*Brooks, J.*) made a finding of material findings, as follows:

"The father at different times had complained to the defendant about conditions under which he was living and expressed his desire to leave plaintiffs' house. The defendant endeavored to ease his father's mind and urged him to remain. He was unaware of his father's plan to leave and did not know of his departure until several days after it had taken place. He tried unsuccessfully to get him to return. The father said he would rather die than to return to the plaintiffs.

The father was admittedly eccentric. It would have been quite natural for him to have become dissatisfied even if he had little cause to do so. I find that he did become dissatisfied and left the plaintiffs' house for that reason. In view, how-

ever, of the son's earnest efforts to persuade him to return and assuming the defendant's sincere interest in his father's welfare, I cannot conclude that the conditions in the plaintiffs' house with which the defendant was quite familiar amounted to a breach of the contract by the plaintiffs, so as to justify defendant's terminating his end of the contract.

The question then comes, whether the defendant's father, having run out on him, so to speak, the defendant can be held to the contract so as to compensate plaintiffs for the damage they have undoubtedly suffered as the result of the departure of their boarder. Putting it in another way, had defendant obligated himself to keep his father at plaintiffs' house so long as he should live and be properly cared for?

Plaintiffs were willing and equipped to carry out the contract to care for Mr. Pearlstein. Defendant was willing, indeed anxious, that the contract be carried out and was ready to do his part. Through no fault of either party, the contract became impossible of performance. A situation had developed which neither party contemplated.

Perhaps it would be analogous to this situation if Mr. Pearlstein, instead of arbitrarily leaving plaintiffs' house, had been taken ill and had to go to the hospital for several months and then died. It surely would not be fair to hold defendant to a contract for care under those circumstances. I am inclined to think that the same holds true of the case at bar and that the loss must lie where it has fallen, namely on plaintiffs.

Accordingly, I find for defendant."

The trial judge allowed the following two requests for rulings of the plaintiffs:

"1.   Upon all the evidence, the plaintiffs were

at all times ready, willing and able to perform the contract entered into by the parties.

2. Upon all the evidence, the plaintiffs have not been guilty of any breach of the agreement."

and denied the following:

"3. Upon all the law, the contract was noncancelable.

4. The plaintiffs are entitled to recover, the unpaid monthly instalments from April 1, 1952 to September 18, 1953."

The plaintiffs claim to be aggrieved by the denial of their requests numbered 3 and 4 and "especially by the finding for the defendant, after stating that plaintiffs sustained damage and were ready, willing and able to carry out the agreement."

The report states that it contains all the evidence material to the questions reported.

In support of their contention the plaintiffs cite *Lancaster v. Marshall*, 69 R. I. 422, where the defendant's decedent had agreed to pay the plaintiff $15.00 per week for one year to take care of her. She died within the year. The plaintiff was allowed to recover from her estate for the whole year, notwithstanding her death, because there was evidence that the deceased made an express promise to pay for the entire period whether she lived or not, such condition being insisted upon by the plaintiff as a protection in case her husband should have to give up his employment in order to attend to her household affairs while she was absent. The court said:

"We agree with the well-established rule . . . that in contracts in which performance depends upon the continued existence of a certain person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance. *Yerrington v. Greene*, 7 R. I. 589."

In the case at bar the contract did not provide for the monthly payments for the lifetime of the

father whether or not he received the care and support, so it is distinguishable from the above cited case of *Lancaster v. Marshall*. The defendant's father in the instant case left the home of the plaintiffs and would not return, justifiably or not, although urged to do so by the defendant. Is the latter liable then for the support when his father refused to be cared for by the plaintiffs?

We have searched and found no case in Massachusetts, and none has been submitted to us, directly in point.

The defendant relies on *Cornell v. Cornell*, 96 N. Y. 108, where the defendant agreed to pay the plaintiff $200.00 per annum, payable semi-annually, for the life of her father, Samuel, for Samuel's support and maintenance. The defendant covenanted to support Samuel as long as the $200.00 were paid. The judge found that payments were made until April 15, 1875 and that thereafter the defendant defaulted in her payments; that plaintiff "has at all times been ready and willing to perform" his duties under the agreement; and found for the plaintiff. On appeal a new trial was granted and it was held:

(1) The money was not payable unconditionally, but only on condition of support. Plaintiff's position is that being ready and willing to do so is his only obligation.

(2) The defendant's father, Samuel, not being a party to the agreement, his leaving voluntarily gives the defendant a defense in the event of a suit by the father.

(3) The contract is based on an implied consent of the father and is subject to an implied condition. It is satisfied only by actual performance by the plaintiff of his undertaking which involves father's consent. This has not been done.

(4) The case comes within the principle that a master is not liable for not teaching an "apprentice who refuses to be taught" (*Raymond v. Ninton*, L. R. 1 Ex. 244) and cancels a contract for personal

services of a third person if at the time trained that person is unable to perform (*Spaulding v. Rosa, 71 N. Y. 40*). The same rule must apply if a person to whom service is to be rendered is unwilling to receive it. The plaintiff has not performed on his part; so the consideration, upon which he is entitled to money, fails and he cannot enforce its payment.

The case of *Jones v. Comer*, 25 Ky. L. 1104 is even more in point. In that case a third person agreed with a mother to rear her minor child and to pay him a gratuity on his arriving at adult age, the fact that the minor voluntarily left the promisor's house is a matter of defense.

In *Stewart v. Loring*, 5 Allen 306, plaintiff could not recover for tuition for a specified time (one year) which the defendant agreed to pay, because during the whole of that time the defendant was prevented by illness from attending and receiving the tuition.

An administrator of a husband's estate, in *Stinton v. Prescott*, Adm., 15 Gray 355, was not liable to a surety on his bond, given by the husband for the board and expense of his insane wife at a hospital, for the payments made by the surety for her subsequent support after the husband's death.

We are of the opinion, therefore, that there was no error in the denial of the plaintiffs' third request that "upon all the law, the contract was non-cancelable."

It could be cancelled by the death of the defendant or of the plaintiffs; by the serious illness of the father, if he had to be taken to a hospital; or the illness of the plaintiffs making it impossible for them to furnish any longer the care and support of the defendant's father.

The contract was cancelled by the refusal of the father, through no fault of the defendant, to receive the care, support and maintenance which the plaintiffs agreed to furnish.

There was no error also in the denial of the plaintiffs' fourth request, since it could not be ruled

that the plaintiffs were entitled to recover as a matter of law. *Memishian v. Phipps*, 311 Mass. 521; *Perry v. Hanover*, 314 Mass. 167.

There being no prejudicial error, the *report is to be dismissed*.

Wilfred F. Mirsky, for the plaintiffs.
Julius Stevens, for the defendant.